Good morning. May it please the court. I'm John Zack on behalf of the appellants. With the court's permission, I'd like to reserve four minutes for rebuttal. Good morning, your honors. This is on appeal from the Eastern District of Pennsylvania, and it presents an issue that's confronting numerous courts around the country, which is what to do in the wake of the RGR Nabisco decision by the Supreme Court. The issue that we have to deal with is, how do we define a domestic injury? What test do we use? What test, exactly. Starting with the language in the RICO statute, plaintiffs are able to recover for any injury to their business or property. What we allege in this case is a business that was entirely wiped out. But it was all wiped out outside the United States. It was all wiped out. But my point is outside the United States. Well, we would say no. We'd like to say no. We'd like to say no. You talk about the business. I think what's important here is to understand what kind of business. I think we understand the kind of business. But why isn't that wrong? What happened inside the United States, number one. And number two, Judge Quinonez went through in her opinion and seemed to take anything she could identify from the complaint that might arguably be an allegation of harm. And they concluded none of this happened in the U.S. Did she leave anything out of her analysis? She did, Your Honor. What she left out is my client has, the majority of his business is with law firms and clients that reside here in the United States. So what his job is, is to collect information in China. And then his product is to deliver it back to his clients here in the United States. He reports back to the law firms. The law firms typically use that information in regulatory and criminal investigations. That's how this narrow sort of world works. So if you were to value his business, let's say I went to go buy his business. And I looked at what is this thing worth? There are desks and there's office space in China. But the value to the business is the clients that he has and the ongoing contracts that he has with companies in the United States. The only contract specified that, at least the one we're dealing with, that the law of China will control? Yeah, the agreement that he signed specifically with GSK did say that. But I don't think it's a question of what law controls. It's a question of where is he injured or where is he hurt? But his compensation was also pursuant to the same contract. It was going to be in Chinese currency. It was going to be in Chinese currency here. And their business was all located there. So it was unable to operate its business from China. You're talking about the impact it had on its ability to procure customers. Not procure. It's effect on customers and contracts that it had ongoing. But that's the effect of the conduct, not the location of the injury. No, so the test is framed as where, this is why we, you know. You said the test, but there's no test. The test that we're advocating is the test from Judge Fahler, who's written three sort of very thoughtful opinions on the Southern District of New York. And what she does is she breaks down, there's a test for property and she has a test for business. And the test that she advances for business is whether there are substantial negative business consequences occurring in the United States. And that's how you frame the question. And so when you look at my client's business, he has tremendous negative business consequences in the United States. Because all of his customers, all of his ongoing contracts are in the United States. Those are wiped out. Those are gone. Well that means that any foreign company who relies on the customer basis of folks located in the United States will contend they have a domestic injury. They may, but remember there's a limiting principle here. I'm not advocating for, you know, some of these cases you have people shipping, you know, corn oil or, you know, tangible products. I'm not saying just because you have one customer in the United States that you pass the test. You know, Judge Fahler, I mean I think these opinions are very useful because she has a limiting principle. It has to have substantial negative business consequences. How does Judge Fahler's opinions fare after the Second Circuit has given its rulings about how to define a location test? I think it's fair. Well, because the second, that screening case, right, relates to property, not business. Specifically it relates to tangible property. What I found there was the plaintiff had, the defendants had stolen some bonds and some stock shares. They had stored them in a safe in New York. And they said, all right, that's physical property. You lost it there. This is different. This is, and that would be the same under Judge Fahler. I mean it's physical property, but it's, the value of it is a kind of intangible value. You can put a specific dollar on it, you can look at the face value of the bonds, but we're not talking about something that's only worth the value of a sheet of paper that the thing is printed on. I think that's right. The way the Second Circuit at least treated those bonds is they treated those as being physical, tangible property. And what they're trying to eliminate there was, they didn't want a situation where just because you have a bank, a bank account in Manhattan, everybody in the entire universe would be trying to sue in the Southern District of New York. And so they were trying to establish a limiting principle. So just having a bank account wasn't enough to have an effect. But to answer the court's question, I think Judge Fahler's reasoning lines up exactly with Baskin. The difference here is we're under the business sort of part of it. That's property, we're under the business as the RICO statute has. And the reason you have, you permit business injuries to be recovered is because businesses have different types of injuries. Losing your customers, losing your contracts, those are all types of injuries that businesses suffer. And you have to focus on that. And the District Court didn't look at that. And I think if you look through the cases that have tried to grapple with the post-RGR world, they almost all deal with property or intangible property, not an actual business. And so to look at what my client had is he has a business that's wiped out and the business is, the majority of the business is with U.S., he's providing service to U.S.-based law firms and addressing U.S.-based legal problems. So are you saying that the Second Circuit and the Seventh Circuit cases which seem to be the only circuits that ruled on this post-RGR, they were property cases, tangible, intangible. You're saying there's another category that could business and your position is that when it's a business the injury can occur where your client base has, where your client base has dried up. Well, no. First, yes. I think the Baskunin is property tangible. The Seventh Circuit case is property intangible. It's a bundle of litigation rights. I am saying there is this other category of business. And it's not just me. That's what the statute says. And that's what Judge Fala, that's how Judge Fala derives her test. And it's not just your customer base dried up. I think there are a number of cases that defendants say, which, correct me if I'm wrong, prospective or possible clients don't count. That's too intangible to be an actual injury. I'm not saying that. I'm saying actual ongoing customers that were working under contract. What are the allegations in the complaint that Judge Fala has missed that she should have relied upon in concluding that there was not sufficient contact to get a standing individual? Yeah, I think it's where we allege our injuries, including in paragraph 9 of our complaint when we discussed that we had numerous ongoing contracts and customers. And so I do want to, this is a very important point for our argument. It's a very important point, but let's say we look at the contract. You're kind of looking at the one of the two tests that focuses on where the conduct occurs that resides to the injury. And forgetting for a second the injury, because that's kind of hard to define. But how do you, where the contract is, that's not an easy question. Is it where the parties negotiate the contract? Is it where they execute the contract? It's the kind of question that reflects the law of conflicts for a while and maybe we should try to look at this in terms of the law of conflicts. And you're almost arguing a kind of international shoe argument on steroids in terms of substantial contracts with a form that justify jurisdiction. So what I'm arguing is, I do think there is a place for looking at where the RICO contract, where the RICO conduct, excuse me, is directed. I'm not arguing that just where the RICO conduct occurs is enough. I think the cases are very critical of that. But I think our argument is narrower and more practical, which is where, you've got a business, it's injured, it's wiped out. Where is it feeling these negative consequences? And it's with its client base, which the contracts are wrapped in with the client base, but it's what were you doing? Well, I had 15 different clients that I was doing work for. It's like a law firm, we all work, we build different clients each day. That's, my client had the same type of business. So when this all happened, he's working on other work, he's working on other cases, and those are all gone. And those are U.S.-based injuries, because those are all work that he's doing. But the injury is felt where the business is, not where he lost it, not where the business opportunity disappeared. Well, so that, I mean, that is adopting sort of the narrow formalistic rule where you're saying, but what, where you're locking yourself into just the residence of the person or the business. But under Judge Falis' test, it's where are you feeling the negative business consequences? But the Supreme Court, one of the quotes in RJR Nabisco is, nothing in 1964C provides a clear indication Congress intended to create a private right of actions for injuries suffered outside the United States. All these injuries were felt outside. It was caused by the absence of business. Tell me how the injury wasn't felt outside the United States. It is felt. I'm not saying it's exclusively in the United States. It is felt outside the United States. A part, component of the injury is when his business is shut down, his computers are seized, he loses his space there, he loses his employees in China. The other piece that he's losing, though, is his customers and his contracts, which are all in the United States. This is critical to his business, because I think the Supreme Court recognized that there is a lot of fact patterns, and it's very difficult to map onto every single one. But you have to look at what his business is. He's literally only in China to gather information. His real business, his real base, is his U.S.-based customers who he's going back and reporting to, and that's all used for compliance with U.S. laws. Especially in the times of the Internet, we could actually, and some of this is probably going on here, you could, without much difficulty, have a situation where parties got together and created substantial contracts in some far-off land that impacted directly persons in the United States that came from the parties to his contract. The persons entering into his contract never once set foot in the United States, all done via the Internet. The business explodes, and the damage is felt by the people in the United States. And let's say it exploded because of some kind of contact which would run afoul of legal laws. You're saying that then we would look not to the significance of the relationship between the form where the business was, but to the form where the business, where the harm to the business was felt, even though there would have been no physical contact whatsoever with that latter form, because that's where the business was lost. That's what you're arguing. No, I mean, I don't think I'm asking for that sort of an explanation. It sounds like they can't hear the law, but to me that sounds like exactly what you're arguing. But it's not. I can't even see it. What you're arguing. What I'm arguing is very different, which is the FALA test, the substantial negative business consequences, let's just take each word. It has to be substantial. That would not be substantial, I don't think. It would be substantial if all the business impacted U.S. persons and companies. That's your scenario. I think our facts are very different than that in that our scenario is that we have our entire business is built around a U.S. regulatory scheme doing these FCPA type cases. That's what we do. Our substantial our contact with the United States is our entire work product is a service that's being used to service U.S. laws. To sit before the U.S. Attorney's Office and make a proffer and to do those sorts of things that you do in these FCPA type cases. His business is unique in that regard where what he's doing is he has to be trying to gather that information and then he has to deliver it to a U.S. lawyer and then eventually to a U.S. regulator. I think that's a very unique set of circumstances. None of these cases have a services business like this. They're almost all tangible goods. I think that to not capture this type of a business is not what the RICO statute wants to do or was meant to do. I don't think it's what RGR will form. I'm sorry, I'm out of time. I'll be back. Good morning. May it please the court. Kurt Hansen from Paul Hastings on behalf of GSK, the appellees here. The Traw Court got this one absolutely right. I think your early questions were actually right on point as well. Everything occurred here in China and I'll get to their allegations about alleged I noticed early in the morning when you just said here in China. You probably have more say than I do. Here in China, that's sort of the way I talk actually. I sort of say here because I'm in China a lot but I apologize for that. Therefore found no standing. As pointed out, Planus Business was located in China. Assisted companies which sought to conduct business in China and most importantly they found that there was no U.S. offices or any tangible property that they had here in China. I keep saying here in China but in China. But your adversary is focused on this business thing rather than property. Forget tangible property because that makes it easier. But this is not a case of dealing with tangible property. It's not the discount of that case, second circuit case. How do you take the approach, the limitations of Rigo after Nabisco and apply those in a situation where we're talking about injury to intangible property. And I think what my adversary did not discuss and did not make a submission on is Armada. I think Armada actually is a very solid test. Armada says you have tangible property. That is as both your honors have pointed out makes it for an easier question. If you have tangible property here, you have a property interest in the United States. Armada is a seventh circuit case. Seventh circuit, excuse me. And then would find, to make it easier, found that in right, exactly. So let me just restate that. So tangible property was found in Baskunet. That was an easy case. Found that there were multiple tangible property located. Then Armada came along and said we have an intangible interest here. That intangible property interest here was the loss of litigation rights. And there was some dispute about that. And then they said that's an intangible right. What are we going to do? So we need to take a look at the location of where the injury was felt. Where was the injury felt? And they said an intangible business because that was a business who was a plaintiff in that case. They said what are we going to do in that? They said okay, you have to see where the injury was felt. There the injury was felt in China. And so we would argue and I think it's pretty clear here that whether it's business interest or whether or not it's intangible interest, there's really no there would be really no difference. That in fact was a business who had lost something in Armada. Here there's a business that actually lost. In fact here we would actually say it's even clearer, right? Because here the business was lost. They allege one injury. They lost completely the business. Where was the business located? Where was that? That was in China. So we don't think that there's any distinction respectfully between intangible and a business injury. And the considerations of Armada, because the statute says business or property. Property has tangible and intangible. Your view is we should either not call business intangible or apply Armada to business. We think that, yes, we think that the test is where is the injury felt? Well if we do that, I'm looking at paragraph 9 which is accurate as to it. And he said that the events in this case, majority of contracts were companies in the United States, including U.S. law firms. Much of the business focused on F.C.P.A. investigations and other investigations. It goes on to say that China Ways had numerous pending engagements and contracts with law firms and businesses in the United States. Does it depend on which side of the mirror we look through? So what if one of the U.S. based businesses was able to come in and based upon the same set of RICO predicates argue for civil RICO liability. But they have to be on this side of the pond as opposed to the other side of the pond. Would that make a difference? It should make a difference. I think that's an interesting question. I mean most of these cases obviously are looking at foreign companies and trying to decide whether or not there was a domestic injury. I think if you had a domestic company and you were taking a look at sort of the injuries, I still looked, where is the injury felt? That's the test. Where is the injury felt? So here, under your hypothetical, Your Honor, if there was a U.S. company had injuries that were felt in the United States, then we would say that yes. And in fact, Would a breach of a contract or a cessation of a contract be such an injury? You've got two parties, at least, maybe a lot more. And one of those parties at least is in the United States. Why wouldn't that party, you could argue that this person doesn't have standing to assert that injury. Maybe that's where we are. But why wouldn't that U.S. based company have an injury that would be cognizable under a RICO suit? Well, I'm implying actually they could if the injury was felt in the United States. A contract is property, but it's an intangible property. And so we actually think that the test under Modem makes complete sense. And again, what we would say here, looking at the allegations that they have, what they allege is they lost their business. They don't, they allege that there were certain business opportunities in other courts that have found actually just in these specific cases that it's not enough to say business contracts. They lost revenue in the United States. And the Brin and the Goodwill, Goodwill and other assets were lost. The Goodwill, where do you find that? The Brin would be in China, but I'm not sure we can isolate it from China. This is all coming from paragraph 9. Well, again, Your Honor, the injury was felt, we believe, in China. Now, if you take a look at the individual contracts, there are other cases that have said, listen, there's business opportunities in the United States. There's contracts in the United States. They all have said that those are intangible interests of the plaintiff. And then therefore, since they're intangible assets, you have to look at where the injury is felt. And in fact, some of the public policy that they found, in cases where people would say that opportunities were lost, or there are contracts, or there are other business opportunities in the United States, they have found it would be easy for somebody, similar to here, where this is a Chinese company. Their whole thing, they say, connecting the dots in China. Everything happened in China. It's not surprising, as most companies that are foreign, they have some U.S. connections. All these cases have some U.S. connections. The question is, is it enough that they have customers in the United States? We would say no, in terms of that. They may have some contracts. Contracts are being performed in China. The injury is being felt in China. And so, if it's just enough that a plaintiff can come in and say, I have customers, or I have customers in the future, maybe in the United States, that would swallow up the rule. Again, remembering that their comedy and other reasons were why they actually said that we need to find that there has to be a domestic injury. There has to be an injury in the United States. And it's not enough just to come in and say that they have certain customers. I'd like to ask you about a procedural question I have. Your district court said that by failing to allege domestic injury, that the case should be dismissed pursuant to a 12B1 for lack of jurisdiction and understanding. Isn't the domestic injury requirement really just an element of RICO, and that 12B6 would have been the proper prism? And if that's right, does it matter here? We agree that under prior cases that it probably would have been more proper to be a 12B6 because it was a finding on the merits. We don't think that it matters. It hasn't been brought up by the other side. The judge specifically said even though I'm applying the 12B1 standard, that I'm going to look at 12B6 and apply the facial standard. In other words, I'm going to take the things that have been alleged, and the complaint is true. So we think that while it may have been more proper to consider it as a 12B6, there was no prejudice. What is your position, though? Is the domestic injury requirement an element of jurisdictional matter? It's actually, I would say, both Your Honors, it's a standing requirement that usually is adjudicated under 12B6. So I think that's where the confusion came in place. It's a standing predicate to bring a RICO claim. Are you saying it's a standing predicate because it describes the type of injury in fact someone needs to sustain? Why are we calling it a standing requirement? Or are you talking about it as a credential standing requirement, meaning to give me statutory authority to bring this cause of action, which is actually really a 12B6? It's a RICO standing. Your Honors, the way I understand it is it's a RICO standing, something that you have to allege. You have to allege injury, now found domestic injury, and you have to find also proximate cause to actually have standing to bring a RICO claim. Thank you. So one thing I did want to address is that they suggested that there was some other tests by Judge Vrela, and actually she had some subsequent decisions in which she talked about focusing on where the effects of the injury are. We would argue that the business consequences test that Appellant is talking about is no different relative to a different standard that everyone is going to take a look at, and you have multiple places you're looking at. That judge, and I think all courts, are taking a look at where is the injury felt? Not where certain business consequences are. Where is the injury felt by the party that is bringing the claim? China is absolutely where that was felt. We  that it was felt? It is the only place it's felt, Your Honor. The parties to the contract did not feel anything here, and then he said, well, maybe if they did, then there is a statutory standing issue that pops up. That this is not the right party to assert the injuries that were felt by the contractual parties in the United States. Is that where you're going? Well, where we are is there's one injury, Your Honor. It's loss of business. That loss of business is felt, and they have no other. They don't have a harder issue would have been, Your Honor, frankly, if they had a subsidiary that was in New York or California, as some of the cases have, where they have a real business interest. Here they have nothing in the United States. So where can the loss be felt when you lose your business as a Chinese business? You're feeling it in China. You're not feeling it, you know. Do you have, it's at best a derivative injury based on in terms of U.S. conduct. It's not the injury. The injury is being felt. The loss of the business is being felt in China. Just with my remaining time, one of the things that we did bring up was obviously comedy. One of the reasons for this, and I think what's this case, you don't have to necessarily do an analysis of each case to determine, but the courts have said we have to be careful not to sit have U.S. courts or U.S. juries under NICO actually sit in judgment about what's happening in other countries. And I would submit that there is, that that's exactly what the appellants are asking the court to do here. Not you, but ultimately the jury. Have a Chinese court make a decision that it wanted to prosecute and in fact found them guilty of Chinese violations. Here they're asking for trouble damages and basically to sit in judgment and their papers are replete with complaints about the Chinese justice system. Essentially what they're doing is asking court here to get punitive damages in fact for how they were treated in China but we think that also implicates proximate cause, which the court didn't get to but we believe that they were interviewing actors, the justice system there, that they were the true ones we were not, we were not the proximate cause but it also implicates policy issues that they're coming here asking a United States court a United States jury to sit in judgment of what happened in China. So with that unless you have any other questions I think that we would just ask that you affirm the very well reasoned and thoughtful decision. Thank you very much. No, not at all. It's amazing how the appellate always views the district court opinion as being very well reasoned. I want to respond to a couple of things. Let's go back to the judge failure cases. There's three cases. The first Elsevier case she looks at business injuries and what she first looks for is she asks whether or not the fraudulent conduct had, and I'm quoting, had some effect on plaintiff's relationships with actual or prospective U.S. customers. So she's looking under the business says, well do you have customers here in the U.S.? They didn't. She says no. So there's no business injury there. She looked if there was a competitive injury, like were they being hurt vis-a-vis their competitors? That's another type of business injury. She said yes there was, but that was in Brazil. So to try and collapse again business under property is a mistake and that's not how Judge Vela did it. In the second Elsevier where she actually found Rico standing she focused on property instead of business. What she found was this company was selling journals and they were deprived of them in New York. So I think it's a huge mistake to read out business from the property and business. That's just not how the statute's written. Second, the Armada case was not a business injury. It was an arbitration award. The business there was, I think, from the plaintiff was from Singapore, the defendant was in China, they went to a London arbitral proceeding and they tried to enforce the award in the United States instead of somewhere else. So it was not a business injury. Third, he keeps saying missed opportunities. We are not arguing opportunities. We are arguing actual ongoing business. Actual work that is being done. Not some speculative thing that might happen. The case is focused on speculative things that might happen. We're talking actual business that we had at the time. And again, it's not just some connection to the United States. I'm not going to reiterate what I'm saying, but this business is one where they repeatedly they're providing the service to the U.S. for very specific U.S. legal reasons. And I think what he asked, the rule they want you to ask is just to employees, just too formalistic. Saying, where is the business located? Think about it. If we had just an office here, that when we paid rent for an office, that when we flew back to meet with our law firms, with our clients, that's going to make the difference instead of staying in a hotel room? That's crazy. That's too formalistic. And that can't be the difference. I really do respectfully suggest that Judge Fela's three opinions and her test captures the unique aspects of business. It gives the court strong limiting principles and allows legitimate cases to be brought, like this one, and limits the sort of frivolous cases that a lot of the other cases have concerns with. The last thing I want to say is that it's also worth considering, too, where the conduct is directed. Some of those other cases where they didn't look at the actual, where the injury is. I didn't think you were relying on conduct. I thought you said that. It's not conduct. It's where, if there's ever an intent to where it's directed, I think that's a relevant thing to look at. I don't think it's dispositive, but I think it's something to look at. Where is the defendant intending its harm to happen? Which is different than just where the conduct occurred. Unless the court has any questions, we would appreciate your time. Why wouldn't the answer to that be China? Where the defendant was intending their harm. Why wouldn't the answer to that be China? Because the purpose here, as alleged in the Rico conspiracy, is this was an effort to obstruct an ongoing U.S. based investigation. So the whole point here is to undermine that ongoing S.C.P.A. investigation. And so their harm is directed at subverting that process and using my client as an unwitting instrument and he has his entire life ruined, gets thrown into jail for that. We appreciate it.